902 F.2d 1566
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In re PATRIOT'S POINT ASSOCIATES, LTD., a South Carolina
Limited Partnership, Debtor.
R. Geoffrey LEVY, Trustee, Plaintiff-Appellee,
v.
CITIZENS AND SOUTHERN TRUST COMPANY (SOUTH CAROLINA) N.A.,
Defendant-Appellant.
In re PATRIOT'S POINT ASSOCIATES, LTD., a South Carolina
Limited Partnership, Debtor.
R. Geoffrey LEVY, Trustee, Plaintiff-Appellee,
v.
CITIZENS AND SOUTHERN TRUST COMPANY (SOUTH CAROLINA) N.A.,
Defendant-Appellant.
 Nos. 89-3333, 89-3353.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 10, 1990.
Decided May 2, 1990.
As Amended May 21, 1990.
 
 Appeals from the United States District Court for the District of South Carolina, at Charleston. Solomon Blatt, Jr., District Judge. (CA-89-1917-8-2)
 John Douglas Nunn, Nelson, Mullins, Riley & Scarborough, Columbia, S.C. (Argued), for appellant; Howard A. Van Dine, III, Nelson, Mullins, Riley & Scarborough, Columbia, S.C., on brief.
 Joy Scherffius Goodwin, Levy & Goodwin, Columbia, S.C., for appellee.
 D.S.C.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 1
 Before K.K. HALL, Circuit Judge, and WALTER E. HOFFMAN and ROBERT R. MERHIGE, Jr., Senior United States District Judges for the Eastern District of Virginia, sitting by designation.
 
 ROBERT R. MERHIGE, Jr., Senior District Judge:
 
 2
 This is a consolidated appeal involving two orders of the United States District Court for the District of South Carolina. The first appeal arises from the district court's grant of a preliminary injunction prohibiting the scheduled distribution by the Appellant, Citizens and Southern Trust Company, N.A. (the "Bond Trustee"), of approximately $940,000 in semiannual interest payments to the owners (the "Bondholders") of $21,000,000 in Patriot's Point Development Authority bonds (the "Series 1987 Bonds"). The second appeal is taken from the district court's order allowing the Bankruptcy Trustee to abandon a portion of the floating dock system (the "Dock System") which was to be used in constructing a marina component of a development project. We affirm the injunction, reverse the abandonment, and remand for further action in accordance with this opinion.
 
 
 3
 The Patriot's Point Development Authority (the "Authority"), a body politic and corporate, was organized under the laws of South Carolina and was authorized to develop several hundred acres of real estate known generally as Patriot's Point (the "Project Site"), which is located in Mt. Pleasant, South Carolina. Pursuant to S.C.Code Ann. Sec. 51-13-810, the Authority was permitted to incur bond indebtedness in order to finance the acquisition and construction of improvements at the Project Site. Proceeds from the sale of bonds were to be used to defray costs associated with issuance of the bonds, to construct the designated project improvements and to advance sums necessary for payment of interest on the bonds during the three years immediately succeeding the issuance of the bonds. In order to secure the repayment of the bonds, a statutory lien is authorized in favor of bondholders on any project, including extensions and appurtenances, financed by the sale of the bonds. As additional security for the bonds, the issuer is authorized to pledge revenues from the financed project.
 
 
 4
 To facilitate development of the Project Site, the Authority entered into a lease (the "Master Lease") with the Patriot's Point Associates (the "Associates"), a South Carolina Limited Partnership, on March 12, 1984. The Master Lease, including two subsequent amendments, required the Associates, as agent for the Authority, to construct a hotel on a portion of the real property under the Master Lease and to build a public marina on the river frontage immediately adjacent to the Hotel (hereinafter the Hotel and Marina are collectively referred to as the "Project"). The Authority issued and sold $21,000,000 in Series 1987 Bonds with a portion of the proceeds being set aside in the Bond and Interest Redemption Fund ("Bond Fund") for payment of interest on the bonds thus issued. As security for the Series 1987 Bonds, the Authority granted a statutory lien (the "Statutory Lien") over the physical improvements at the Project Site and pledged the revenues to be derived from the future operations of the Project in favor of the Bondholders and Bond Trustee.
 
 
 5
 The bond proceeds earmarked for payment of interest were delivered, in trust, to the Bond Trustee for deposit in the Interest Account and the Interest Reserve Account (collectively the "Interest Accounts") within the Bond Fund. The Bond Trustee maintains the funds in issue within the Bond Fund pursuant to the terms of the General Bond Resolution (the "Resolution") and First Supplemental Resolution (the "Supplemental Resolution") which were executed by the Authority in conjunction with the issuance and sale of the Series 1987 Bonds.
 
 
 6
 The underlying bankruptcy case was initiated through the filing of an involuntary petition on November 29, 1988, by one of the several general partners in the Associates. On February 17, 1989, an Order for Relief was entered and thereafter R. Geoffrey Levy was appointed bankruptcy trustee (the "Bankruptcy Trustee") for the Associates. On August 4, 1989, the Bankruptcy Trustee filed a complaint to determine the ownership of the Bond Fund and an accompanying Motion for Preliminary Injunction enjoining the Bond Trustee from making a scheduled interest payment to the Bondholders. The Bankruptcy Trustee alleged that the funds on deposit in the Bond Fund were property of the Associates' bankruptcy estate and that disbursement of the upcoming August 15, 1989, interest payment to the Bondholders would cause irreparable harm to the Associates and the Associates' creditors. The Bond Trustee objected to the request for an injunction, asserting that the district court lacked jurisdiction over the funds on deposit in the Bond Fund and contending that those funds were subject to an express trust in favor of the Bondholders pursuant to the terms of the Resolution and Supplemental Resolution. After a hearing on the Bankruptcy Trustee's motion, the district court issued a preliminary injunction prohibiting the Bond Trustee from making the interest payment.
 
 
 7
 On October 6, 1989, the Bankruptcy Trustee filed his Notice of Abandonment and Settlement of Claim seeking to abandon the Dock System to a designated creditor of the Associates, Atlantic Marine Services, Inc. ("Atlantic"). General creditors were required, pursuant to the terms of the Abandonment Notice, to file objections by October 13, 1989. The Bond Trustee objected, citing improper notice of the hearing and further asserting that the district court lacked jurisdiction over the Dock System. The Bond Trustee also challenged the Bankruptcy Trustee's authority to abandon the Dock System to a particular creditor without establishing that creditor's priority through an adversary proceeding or under a confirmed plan of reorganization. After a hearing on the Bond Trustee's objection, the district court directed the Bankruptcy Trustee to abandon the Dock System to Atlantic and ordered that a portion of net proceeds from the subsequent sale to a third party be deposited with the district court, with the balance of the proceeds being paid to Atlantic for installation of the Dock System at the third party's facilities. The district court's order further provided for the deposit of proceeds from the settlement of certain insurance claims on the Dock System with the district court, and conveyed salvage rights to the balance of the docks to Atlantic.
 
 I. THE DISTRICT COURT'S INJUNCTION
 
 8
 The proper standard of review of a preliminary injunction is whether the record demonstrates an abuse of discretion by the district court, and not whether the appellate court would have granted the injunction. Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir.1980); Sinclair Refining Co. v. Midland Oil Co., 55 F.2d 42, 45 (4th Cir.1932). The appellate court should not set aside the trial court's findings of fact unless they are clearly erroneous. In re Martin, 698 F.2d 883, 885 (7th Cir.1983).
 
 A. Jurisdiction of Bond Fund
 
 9
 The Bond Trustee argues that because the Bond Fund is not property of the estate according to Sec. 541 of the Bankruptcy Code, the district court lacked jurisdiction over the Fund. The Bankruptcy Trustee argues that because the debtor had a right to the earnings of the Bond Fund, the Bond Fund is part of the estate and the district court had jurisdiction to issue the injunction.
 
 
 10
 Section 541 of the Code defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. Sec. 541. It is well established that the bankruptcy estate includes whatever property interests the debtor had at the commencement of the case, and that whatever restrictions were placed upon such property rights prepetition continue to exist post-petition. Creasy v. Coleman Furniture Corp., 763 F.2d 656 (4th Cir.1985); Cross Electric Co., Inc. v. United States, 664 F.2d 1218 (4th Cir.1981). The bankruptcy estate's rights in a debtor's property are limited to those rights had by the debtor. Matter of Jones, 768 F.2d 923 (7th Cir.1985). If the debtor does not have an interest in property, that property is not property of the estate; consequently, the district court could not exercise jurisdiction over such property. See Matter of Xonics, Inc., 813 F.2d 127 (7th Cir.1987); In re Ace Industries, Inc., 65 B.R. 199 (Bankr.W.D.Mich.1986); In re Illinois-California Exp., Inc., 50 B.R. 232, 240 (Bankr.D.Colo.1985); Jordan v. Randolph Mills, Inc., 29 B.R. 398 (Bankr.M.D.N.C.1983), contempt citation vacated, 716 F.2d 1053 (4th Cir.1983).
 
 
 11
 By issuing the injunction, the district court sought to maintain the status quo while determining the parties' interests in the Bond Fund pursuant to the Bankruptcy Trustee's complaint. The use of an injunction to preserve the status quo while determining the merits of a controversy is a common practice. See Cordis Corp. v. Medtronic, Inc., 835 F.2d 859 (Fed.Cir.1987); F.T.C. v. H.N. Singer, Inc. 668 F.2d 1107 (9th Cir.1982). The district court issued the injunction because it determined that serious questions had been raised concerning the parties' interests in the Bond Fund. The rights of the respective parties to the Fund are defined by Sec. 5.03(a) of the Resolution, which provides that the Fund is to be used solely for the payment of principal, redemption premium and interest on the bonds.[1] Section 5.03(a) also delineates the rights of the parties to the earnings of the Bond Fund. After providing that the moneys in the Fund shall be kept invested to the extent practical, Sec. 5.03(a) provides that earnings become part of the Bond Fund unless an authorized officer of the debtor directs that the funds be transferred to the Construction Fund (used to pay subcontractors), and that the chairman of the Authority consents to the transfer.[2]
 
 
 12
 While these provisions are unambiguous and appear to direct that the Bond Fund is to be used for payments of principal and interest to the Bondholders and that the earnings of the Bond Fund, at the debtor's direction, are to be transferred to the Construction Fund in certain circumstances, the Bankruptcy Trustee has raised a potential statutory conflict which raises serious questions about the status of the Bond Fund. According to South Carolina Code Sec. 6-21-310, interest and principal may be paid from the proceeds of the sale of the bonds.[3] The Bond Trustee intends to make an interest payment from the Bond Fund, which currently consists only of proceeds and the earnings therefrom resulting from the sale of bonds, as the uncompleted Project has yet to generate any revenue. On the other hand, Sec. 51-13-810 provides that interest and principal are to be payable from the revenues of the project.[4] The Bankruptcy Trustee argues that Sec. 51-13-810 precludes the Bond Trustee from making the interest payment from bond proceeds rather than revenues.
 
 
 13
 Confronted with this potential conflict, the district court issued the preliminary injunction for the purpose of preventing the disbursement of the interest payments to the bondholders in order to permit the court to resolve the statutory conflict and determine the ownership of the Fund pursuant to the Bankruptcy Trustee's complaint. The district court may of course properly preserve the status quo until the question of its jurisdiction can be resolved. Fernandez-Roque v. Smith, 671 F.2d 426, 431 (11th Cir.1982), on remand, 539 F.Supp. 925 (N.D.Ga.1982). See also Cordis Corp., 835 F.2d at 863; F.T.C., 668 F.2d at 1112. The Bond Trustee in his brief urges this Court to resolve this conflict according to principles of statutory construction. The Court declines to do so as the issue of ownership of the Bond Fund is at the heart of the Bankruptcy Trustee's complaint, which has yet to be decided by the district court. Because the purpose of the injunction was to preserve the status quo in order to permit the district court to determine the issue of ownership, the Court cannot find that the district court erred as a matter of law in exercising jurisdiction in issuing the injunction.
 
 
 14
 B. Application of Proper Standards for Injunctive Relief
 
 
 15
 The proper analysis to be employed in granting interlocutory injunctive relief is well settled in this circuit as set forth in Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc., 550 F.2d 189 (4th Cir.1977). See also Dan River, Inc., v. Icahn, 701 F.2d 278, 283 (4th Cir.1983); North Carolina State Ports v. Dart Containerline, 592 F.2d 749, 750 (4th Cir.1979). The first step is for the Court to balance the likelihood of irreparable harm to the plaintiff against the likelihood of harm to the defendant. If the balance of harm tips in the plaintiff's favor, then the plaintiff will prevail if he raises serious questions. Blackwelder, 550 F.2d at 195. If the plaintiff fails to prevail on the balancing of the hardships test, the plaintiff must demonstrate his likelihood of success on the merits. It is important to note that Blackwelder specifically holds that the plaintiff need not show a likelihood of success if the balance of hardships tips in the plaintiff's favor. Blackwelder, 550 F.2d at 196. Finally, the Court should consider the public interest.
 
 
 16
 The Bankruptcy Trustee argues that if the Bond Trustee disbursed the interest payments to the Bondholders, the cost of recovering these payments, if ultimately found to be property of the estate, would be prohibitively high. This theory rests upon the premise that the Bankruptcy Trustee would be required to sue a large number of Bondholders to recover the payments. On the other hand, the Bond Trustee correctly points out the fact that the Bankruptcy Trustee offered no evidence of cost of recovery or how many individual bondholders the Bankruptcy Trustee would have to sue. In most circumstances, this lack of evidence would preclude the district court from adequately evaluating the hardship involved in recovering the payments. It is clear from the record before us that the district court relied on the Bankruptcy Trustee's pleadings and arguments in granting the injunction. In the context of a preliminary injunction, where swiftness is a virtue, the district court may rely upon a verified complaint as a basis for an injunction. K-2 Ski Co. v. Head Ski Co., 467 F.2d 1087, 1088 (9th Cir.1982). See also Flynt Distributing Co. v. Harvey, 734 F.2d 1389, 1394 (9th Cir.1984) (urgency of obtaining a preliminary injunction means that trial court may give even inadmissible evidence some weight). The district court's failure to take actual ore tenus evidence under oath was not an abuse of discretion.
 
 
 17
 Upon reviewing the district court's Order Granting Preliminary Injunction, the Court finds that the district court did not err in granting the injunction. In its Order the district court correctly applied the Blackwelder test's first step by balancing the harm to the parties which would result from granting or not granting the injunction. The court found that if the injunction was not granted, the Bond Trustee would disburse the interest payment to the Bondholders, the recovery of which would be cost prohibitive. The court based its conclusion upon argument of the Bond Trustee, who informed the court that there were 270 Bondholders. Furthermore, the court found that if it should be determined later that these moneys were property of the estate, the funds would be unavailable to fund a reorganization or restart construction. With respect to the potential of harm to the Bondholders if the injunction was granted, the court also found that the Bond Trustee failed to articulate any particular harm which would result if the injunction was granted. These findings are not clearly erroneous. Consequently, the court found that the potential of harm to the Bankruptcy Trustee greatly outweighed the harm to the Bondholders.
 
 
 18
 Under Blackwelder, if the balance of harm favors the plaintiff, the plaintiff may prevail if grave and serious questions have been raised, and the plaintiff need not show that he would succeed on the merits. The court found that the plaintiff had raised a serious question of statutory conflict between the statutes creating the Authority, Sec. 51-13-810, and the Revenue Bond Act for Utilities, Sec. 6-21-310. The court found that Sec. 6-21-310, providing that proceeds from bond sales may be used to advance payments of interest, conflicted with Sec. 51-13-810, which provides that interest and principal payments are to be made from project revenues. While the actual existence of a statutory conflict is an open question, it is enough that a serious question has been raised necessitating deliberative consideration. Blackwelder, 550 F.2d at 196. The district court did not evaluate the plaintiff's likelihood of success on the merits.
 
 
 19
 The Bond Trustee argues that the district court erred as a matter of law in issuing the injunction without evaluating the likelihood of the Bankruptcy Trustee's success on the merits. In support of its argument, the Bond Trustee cites North Carolina State Ports wherein this Court vacated the injunction issued by the district court. North Carolina State Ports, 592 F.2d at 750.
 
 
 20
 North Carolina State Ports is clearly distinguishable from the case at bar. In North Carolina State Ports, the Court found that the balance of hardship did not tip in either side's favor, and then applied the likelihood of success on the merits test. In accord with Blackwelder, if the balance of hardships tips in favor of the plaintiff, "it is enough that grave or serious questions are presented; and plaintiff need not show a likelihood of success." Blackwelder, 550 F.2d at 196. As the district court found that the balance of hardships favored the plaintiff and that grave and serious questions were presented, under the Blackwelder test the district court need not have found that the plaintiff was likely to succeed on the merits. See also Fort Sumter Tours, Inc. v. Andrus, 564 F.2d 1119, 1124-25 (4th Cir.1977) (no finding made of likelihood of success on the merits). Consequently, the Court cannot find that the district court erred as a matter of law by not evaluating plaintiff's likelihood of success on the merits.
 
 
 21
 In sum, the district court applied the proper standards in granting interlocutory injunctive relief, and that action is affirmed.
 
 
 22
 II. THE BANKRUPTCY TRUSTEE'S CONVEYANCE OF THE DOCK SYSTEM
 
 A. Sale of the Dock System
 
 23
 As an initial matter, the Court notes that the Bankruptcy Trustee's attempted "abandonment" of the Dock System is not an abandonment as contemplated by law, but is a purported sale of property of the estate. Abandonment of property by a bankruptcy trustee is treated in 11 U.S.C. Sec. 554. Section 554 provides that the "trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. Sec. 554(a). In the instant case, the Dock System obviously was not burdensome or of inconsequential value to the estate, as the Bankruptcy Trustee received $255,000, which was placed in a segregated account, and a reduction in several proofs of claim filed against the estate in exchange for the Dock System. This bargained-for exchange is in the nature of a sale, not an abandonment.
 
 
 24
 B. Bankruptcy Trustee's Authority to Convey Dock System
 
 
 25
 The Bond Trustee contends that the debtor's lack of a property interest in the Dock System precluded the district court from exercising jurisdiction to approve the so called "abandonment" of the Dock System to Atlantic. Moreover, if the debtor had no interest in the Dock System, the Bankruptcy Trustee would have had nothing to "abandon."
 
 
 26
 It is fundamental that the bankruptcy estate must have an interest in property as of the commencement of the case in order for the bankruptcy trustee to dispose of that interest. In re Continental Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir.1986) (Sec. 363(b) sale of assets outside the ordinary course of business is limited to assets of the estate). The bankruptcy estate consists only of the interests in property which the debtor had at the commencement of the case. Cross Electric, 664 F.2d 1218, 1220 (4th Cir.1981) (estate includes whatever property interests the debtor had at the commencement of the case); Jones, 768 F.2d 923, 927 (7th Cir.1985) (estate's rights in debtor's property limited to those rights had by debtor). Inherent in the concept of the bankruptcy estate is that the estate consists of the sum total of the debtor's property rights as of the commencement of the case, no more or no less. Moody v. Amoco Oil Co., 734 F.2d 1200, 1213 (7th Cir.1984). Consequently, in determining whether the bankruptcy trustee had the power to dispose of property, it is the Court's task to determine the nature and extent of the debtor's interest in property.
 
 
 27
 In examining the record, we are hard pressed to find that the Associates possessed a property interest in the Dock System which could have entitled the Bankruptcy Trustee to convey the Dock System to Atlantic. Section 3 of the Second Amendment to the Master Lease provides that:
 
 
 28
 The Authority shall acquire and construct a public marina (the Marina) to be operated at Patriot's Point and the Authority shall own the Marina as part of the Project.... The Marina ... shall remain the sole and exclusive property of the Authority, subject to the [Bondholders'] statutory lien and Trust Estate created to secure the Bonds.
 
 
 29
 Joint Appendix at 168 (emphasis added). This provision explicitly places ownership of the Marina, including the Dock System, in the hands of the Authority subject to a statutory lien in favor of the Bondholders.
 
 
 30
 The Bankruptcy Trustee argues that the Associates had an "equitable interest arising by implication from its contractual assumption of the obligations, liabilities, and responsibilities of the Authority." Appellee's Brief at 23. It is significant that the Bankruptcy Trustee does not assert that the Associates' interest in the Dock System amounted to anything more than this "equitable interest." As the Bankruptcy Trustee purportedly conveyed the entire Dock System to Atlantic, the Bankruptcy Trustee appears to argue that the Associates' "equitable interest" in the Dock System entitled him to convey the Dock System in its entirety.
 
 
 31
 However, this theory is wholly inconsistent with the concept of the bankruptcy estate and the Bankruptcy Trustee's rights with respect to estate property. Upon the commencement of the bankruptcy case, only the debtor's interest in property becomes property of the estate, and the estate's rights in the property are limited to the rights held by the debtor. Cross Electric, 664 F.2d at 1220; Jones, 768 F.2d at 927. The Bankruptcy Trustee may only dispose of the debtor's interest in property which the debtor had as of the commencement of the estate. Continental Air Lines, 780 F.2d at 1226. Yet, the Bankruptcy Trustee did not purport to "abandon" this "equitable interest" in the Dock System; rather, the Bankruptcy Trustee attempted to dispose of the Dock System in toto. It is axiomatic that the Bankruptcy Trustee may not convey an interest which is not part of the bankruptcy estate. To the extent that the Bankruptcy Trustee's "abandonment" of the Dock System was a disposition of an interest in property which was not part of the estate, it is void.
 
 
 32
 Accordingly, the Court reverses the district court's approval of the "abandonment," and remands for a determination of the Bankruptcy Trustee's interest in the property, which he may properly convey as an asset of the estate.
 
 C. Procedure Governing Sale of Dock System
 
 33
 Even assuming that the Bankruptcy Trustee was empowered to convey the Dock System by virtue of the Associates' interest in the property, the conveyance did not comply with the statutory requirements governing sales outside of the ordinary course of business. As alluded to supra, the Bankruptcy Trustee's "abandonment" of the Dock System amounted to a sale of the property outside the ordinary course of business. As such, the sale must comport with the requirements of 11 U.S.C. Sec. 363. According to Sec. 363(e), on request of an entity that has an interest in property to be sold by the trustee, the court shall condition such sale as is necessary to provide adequate protection of such interest. Section 363(o) places the burden of proof on the issue of adequate protection on the trustee and the burden of proving the validity, priority, or extent of its interest in the Dock System by means of an adversary proceeding as is contemplated by Sec. 363(o) and Bankruptcy Rule 7001(2). For this reason alone, the Court must reverse the district court's approval of the abandonment and remand the case to allow the parties adequate opportunity to conduct a sale pursuant to 11 U.S.C. Sec. 363.
 
 
 34
 The Court notes the presence of Sec. 363(m), which provides that the reversal or modification on appeal of an authorization under subsection (b) or (c) of Sec. 363 does not affect the validity of a sale to an entity that purchased that property in good faith, unless the authorization and sale were stayed pending appeal. This provision does not affect the Court's decision, because Sec. 363(m) applies to sales under Sec. 363(b), which requires authorization to sell property of the estate. As it has been established that the Trustee attempted to convey the entire Dock System when the debtor only had a limited interest in it, the attempted conveyance was not a sale of property of the estate as contemplated by Sec. 363(b), and, consequently, Sec. 363(m) does not apply in this instance.
 
 D. Adequate Notice of Hearing
 
 35
 The Bond Trustee asserts that even if the Bankruptcy Trustee was empowered to convey the Dock System to Atlantic, the Bond Trustee was not afforded adequate notice of the hearing on "abandonment." In light of our holding regarding the purported "abandonment" the issue would appear moot, yet in the interest of completeness we would point out that it is a fact that the district court held a hearing on the "abandonment" on October 16, 1989, on 10 days' notice to general creditors. The Bond Trustee was represented by counsel at the hearing and raised an objection to the Bankruptcy Trustee's conveyance of the Dock System.
 
 
 36
 Bankruptcy Rule 2002(2) requires 20 days' notice of a sale outside the ordinary course of business, unless the court for cause shown shortens the time. As it appears from the record that the potential purchasers of the Dock System would not wait long, this Court does not find that the district court abused its discretion in conducting an expedited hearing. Even if we were to find that the district court abused its discretion in shortening the time, a rule requiring notice and opportunity to object is adequately complied with if an objecting party receives actual notice and is afforded an opportunity to raise its objection. In re Glinz, 66 B.R. 88, 91 (D.N.D.1986). Here, the Bond Trustee received actual notice of the hearing and was heard on his objection. Furthermore, the "harmless error" provisions of F.R.C.P. 61 are applicable to bankruptcy cases pursuant to Bankruptcy Rule 9005. See In re Mandalay Shores Co-Op. Housing Ass'n, Inc., 63 B.R. 842, 852 (N.D.Ill.1986). As the Bond Trustee received actual notice of the hearing and objected to the "abandonment," any noncompliance with notice requirements was harmless error.
 
 E. Disposition of Insurance Proceeds
 
 37
 The district court's order approving the "abandonment" of the Dock System also provided that any insurance proceeds recovered as a result of the partial destruction of the Dock System by Hurricane Hugo were to be paid into a segregated account subject to the control of the district court. Apparently, the district court believed that this disposition of the insurance proceeds would maintain the status quo by preventing the transfer of the proceeds to the Fund pursuant to the terms of the Supplemental Resolution.
 
 
 38
 The Bond Trustee argues that this order contravenes the Supplemental Resolution which provides in pertinent part:
 
 
 39
 [a] If prior to full payment of the Series 1987-A Bonds, the Project is damaged by fire or other casualties....
 
 
 40
 [a]ll net proceeds of insurance resulting from such claims for losses shall be paid to and held by the [Bond] Trustee in a separate trust account in the Project Revenue Fund.... The Developer is authorized to direct the Trustee, provided there is no Default ... to disburse so much as may be necessary of the net proceeds of such insurance to payment of the cost of such repair, rebuilding, or restoration....
 
 
 41
 [c] ... all remaining net proceeds if there is a Default ... shall be deposited in the Bond Fund and applied to the repayment of the [Series 1987] Bonds.
 
 
 42
 The Bond Trustee argues that according to Section 9.01(a) of the Supplemental Resolution default has occurred and that the insurance proceeds should have been deposited in the Bond Fund pursuant to the Resolution.
 
 
 43
 The record before the Court contains neither findings of fact nor conclusions of law supporting the district court's order directing the insurance proceeds to be placed in a segregated account subject to the control of the district court. The diversion was effected by means of the "abandonment" order, yet the order sets forth no rationale justifying this action. Where a trial court fails to make findings of fact and set forth conclusions of law, the record on appeal is insufficient for the appellate court to adequately review the decision. In the absence of a complete record, remand to the district court is the proper remedy to enable the appellate court to review the decision properly. In re Thompson, 788 F.2d 560 (9th Cir.1986); Braniff Airways, Inc. v. Exxon Co., U.S.A., 814 F.2d 1030 (5th Cir.1987). Accordingly, the Court remands this issue to the district court to make further findings of fact and set forth conclusions of law.
 
 
 44
 In sum, the Bankruptcy Trustee did not have the power to convey the Dock System, and therefore the provision of the district court's order approving the "abandonment" is vacated and the case is remanded for further consideration in conformity with this opinion. Furthermore, the provision of the district court's order directing insurance proceeds to be deposited in a segregated account is unsupported by the record. This provision is vacated and the case remanded to permit the district court to make adequate findings of fact and set forth conclusions of law.
 
 
 45
 Accordingly, for the reasons stated above, the judgment of the trial court is affirmed in part, reversed in part, and remanded.
 
 
 46
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 47
 WALTER E. HOFFMAN, Senior District Judge, concurring in part and dissenting in part:
 
 
 48
 I concur in the opinion of the Court as it pertains to the disposition of the Dock System. The district court's approval of the Bankruptcy Trustee's conveyance of the Dock System must be reversed for the reasons stated in the Court's opinion. The Bankruptcy Trustee is without authority to dispose of an interest in property which is not part of the debtor's estate.
 
 
 49
 For the same reasons, however, I must respectfully dissent from the Court's opinion to the extent that it affirms the district court's granting of a preliminary injunction which prohibits the Bond Trustee from making the August 15, 1989, interest payment to the Bondholders. I cannot agree that the district court has jurisdiction over the Bond Fund and therefore believe the district court is without jurisdiction to issue the injunction.
 
 
 50
 While an injunction may be used to preserve the status quo pending determination of the merits, jurisdiction remains a preliminary issue. This is especially true where, as here, the district court is sitting as a bankruptcy court and its jurisdiction is limited accordingly.
 
 
 51
 The Court's opinion correctly states that the bankruptcy estate includes whatever property interest the debtor had at the commencement of the case, subject to whatever pre-petition restrictions were placed upon such property rights. The district court, sitting in bankruptcy, is only empowered to affect this estate property. The Bankruptcy Trustee concedes in its brief that contractual terms and legal provisions governing particular funds and control over disbursement of those funds are dispositive in considering the status of the funds as property of the bankruptcy estate.
 
 
 52
 Based on these principles, I cannot conclude that a question exists about ownership of the Bond Fund from which the Bond Trustee seeks to make the August 1989 interest payment. The contingent interest which the Bankruptcy Trustee may have had in the earnings of the Bond Fund (that is, the amount that could have been transferred to the Construction Fund at the direction of an authorized officer of the Associates with the consent of the Authority's chairman) could be satisfied from the balance of the Bond Fund after the interest payment to the Bondholders.
 
 
 53
 The Bankruptcy Trustee advanced no argument laying any claim to the principal of the Bond Fund, which is the bond proceeds from which the interest payments were being advanced. The amount of earnings in which the debtor had a potential interest is fixed in time and amount by the commencement of the bankruptcy case. The fact remains that the debtor's interest is only potential, and not actual, because the contractual contingencies for transferring a segment of the funds (earnings only) to the debtor's control had not occurred at the commencement of the case.
 
 
 54
 On the issue of supposed statutory conflict raising a serious question supporting issuance of the injunction, I again respectfully disagree with the opinion of the Court. The apparent conflict between South Carolina Code Secs. 51-13-810 and 6-21-310 is satisfactorily resolved by the plain language of the statutes. Section 51-13-810 expressly incorporates the provisions of Title 6, Chapter 21, for the issuance of revenue bonds, including all conditions, restrictions and limitations imposed therein.
 
 
 55
 Further, the language in Sec. 51-13-810 addressing payment of principal and interest from revenues is permissive without being exclusive. It does not, by its language, limit payment to that source alone, nor does it address interest payments due during the construction phase before generation of any revenues from operation of the project.
 
 
 56
 Finally, even assuming a statutory conflict exists, its resolution is not dispositive in this case and, therefore, it should not be the basis on which an injunction issues. Regardless of the source for the interest payment to the Bondholders, my views on the ownership of the various funds lead me to conclude that no property of the bankrupt estate is implicated.
 
 
 57
 I would find the district court erred as a matter of law in exercising jurisdiction to issue the injunction, and I would reverse the district court.
 
 
 58
 Regardless, the time has long since passed for maintaining the status quo in this case. The district court should move with due haste to resolve the issues put on hold by the preliminary injunction and bring this matter to a close. The public interest in being able to sell revenue bonds to finance these projects is injured by protracted litigation that delays interest payments on the bonds, making them an unreliable and, therefore, unattractive investment.
 
 
 
 [1]
 Section 5.03(a) of the Resolution, in pertinent part, provides that:
 all moneys in the Bond and Interest Redemption Fund shall be used solely to pay the principal of, redemption premium, if any, and interest on the Bonds, and for no other purpose, and withdrawals therefrom shall be made only to effect payment of the principal of, redemption premium, if any, and interest on the bonds....
 (Emphasis added.)2 Section 5.03(a) of the Resolution, in pertinent part, provides that:
 [e]arnings on investments of the Bond and Interest Redemption Fund shall become a part of the Bond and Interest Redemption Fund, provided, however, that during construction of any portion of the Project, earnings on the Bond and Interest Redemption Fund may, at the direction of the Authorized Officer of the Developer, with the consent of the Chairman, be transferred to the Construction Fund.
 
 
 [3]
 S.C.Code Ann. Sec. 6-21-310 provides, in pertinent part:
 All moneys received from any such bonds shall be used solely for the purchase, construction, improvement, enlargement, extension or repair of the system, project or combined system for which the bonds were issued, including any engineering, legal or other expenses incident thereto, and to advance the payment of interest on the bonds during the first three years following the date of the bonds....
 
 
 [4]
 S.C.Code Ann. Sec. 51-13-810 provides, in pertinent part:
 As the means of raising funds needed from time to time in acquisition, construction, equipment, maintenance and operation of any facility, building, structure or any other matter or thing ... the Authority may issue bonds, payable both as to principal and interest from the revenues to be derived from admissions to and charges for the operation of all or any part of its properties and facilities....
 (Emphasis added.)